We'll hear argument next this morning in Case 13-1075, United States v. June. Ms. Prelogar. Mr. Chief Justice, and may it please the Court, there is good reason to believe that Congress did not want the equitable tolling doctrine to apply to the FTCA time bar. And I'd like to begin by focusing on a few of the issues that arose last hour that are particularly important to understanding Congress's intent. To start with, the questions, Justice Scalia and Justice Kagan, that you were asking at the end about the nature of our rule and what separates this statute from other statutes. I want to be very clear, we're not urging a categorical rule about all pre-Irwin statutes. Here we have statute-specific evidence about the FTCA that makes clear that Congress did not want this particular enactment to be subject to equitable tolling. And that's most clear, of course, from the plain text and those 12 words, Every claim against the United States cognizable shall be forever barred unless, that was lifted, Justice Scalia, as you said, verbatim, from the Tucker Act context where it had been repeatedly interpreted as a jurisdictional limit not subject to tolling. You don't doubt that if those words appeared in a statute that Congress passed tomorrow, we would not interpret them as a jurisdictional bar, would we? Mr. Chief Justice, I think it would depend on whether there was an indication that Congress was intending to incorporate those words from the Tucker Act context. Ginsburg-Gilmour, I thought at least for a statute passed tomorrow, we have the clear statement rule that we have said, we have told Congress, if you don't want to have any tolling, if you want this to be jurisdictional, absolutely rigid, you say so, and of course, Congress, it's your call. But we're not going to interpret a statute that doesn't make that clear statement as jurisdictional. But this Court has also emphasized, Justice Ginsburg, that there are no magic words that are required in this context, and I think Bowles v. Russell makes that particularly clear. There, those words, shall and notice of appeal, were interpreted to have jurisdictional import, and so, too, here in this context. Ginsburg-Gilmour, because this Court had before said that provision about how much time you have to appeal, that that was jurisdictional. And I thought the Court's position was, we decided it once, and we're going to stick with it. But if we haven't decided it, then we look at it, we look for a clear statement. It was not only Section 2107 in that context, but also predecessor provisions and other similar statutory requirements. And that's what the Court said in Henderson. When a long line of this Court's decisions interpreting similar requirements have said that those requirements are jurisdictional, then we'll presume that Congress intended the same meaning. Here we have the identical language that had that jurisdictional label attached to it. And that's an important point. Ginsburg-Gilmour, I don't quite get the identical language, because shall be barred – I mean, that's common to a lot of statutory limitations. You're not suggesting that this would be different if it just said shall be barred rather than forever barred, are you? No. We're saying that when Congress lifted and incorporated word for word the then-prevailing Tucker Act time bar, it clearly was signaling an intent to incorporate the judicial interpretations of that Tucker Act time bar. And, Justice Ginsburg, I think this is an important point about those early Tucker Act cases. Those were not drive-by jurisdictional rulings. Those were carefully considered decisions that attached jurisdictional consequences to the Tucker Act time bar and said that it couldn't be waived. It wasn't subject to equitable tolling. So this wasn't an argument that was made in passing or something that the Court didn't carefully consider. Rather, the Court made a decision in those cases that that language had jurisdictional importance. Ms. Prelogar, I'm wondering what you think about Mr. Schnapper's analogy to the private right of action cases, because it seems to me very similar, is that we're dealing in an area here in which Congress doesn't generally say what it wants with respect to some kind of procedural rule, maybe because Congress doesn't usually think about it. And we have one set of interpretive rules to deal with that situation, and then those interpretive rules basically switch off and we get the opposite set of interpretive rules. And the way it's worked in the private right of action cases, we don't look back and say, well, gosh, you were enacting this statute in the world of Court v. Ashe, and you used language that was identical to language that the Court assumed gave rise to a private right of action there, and so you get a private right of action, too. We've not said that. We've said, you know, now we're in a different world and we're going to require more of you than what the old — than the old language that gave rise to a private right of action under Court. Why is this any different? Justice Kagan, this Court has said in the implied private right of action context that you have to look at the contemporary legal context. That was the Cannon case that we cite in our opening brief and our reply brief. And this Court in Alexander v. Sandoval made clear that those holdings hinged on the fact that Congress had acquiesced in the decision that had prevailed at the governing  Kennedy, I'm sorry. Kennedy, were those two cases pre- or that you just cited pre- or post-Irwin? Well, I was talking about the private right of action cases, Justice Kennedy. So with respect to statutes that predate Irwin, if you actually look at how the private right of action case has fared and how Irwin has fared and what the Irwin scorecard is, more often than not, this Court has held that there isn't equitable tolling in suits against the government. The Court's considered that in five cases and in four of them, Brokamp, Bakerly, John R. Sand and Gravel, and Auburn Regional Medical Center, it's held that the presumption if it applies is rebutted. So I think the private right of action cases suggest rather strongly that Court v. Ash was wrong, that the prior notion that when Congress says nothing about it, there is an implied cause of action, was wrong. That's true, Justice Scalia. And have we said that prior notions of what Congress meant in the past about jurisdiction were wrong at the time? No, not at all. And I think that's the case. No, I don't think the two are parallel at all. And it's an important point here that there's no question that when Congress was enacting the FTCA in 1946 and at all relevant times thereafter, when it was making changes to this time bar, it did view that as a jurisdictional limit and the Court has never questioned that historical. That was the way everything was involving the government and settlement of immunity. It was all, quote, jurisdictional. And then we said, and if Congress made a statute, we said, well, we call that jurisdictional. Congress never called it jurisdictional. Then we took a fresh look at this and we said, that's an exorbitant use of the word jurisdictional. Sure, you can have a statute that has a very tight timeline, but that doesn't mean it's jurisdictional. Justice Ginsburg, let me respond to that by taking a moment to emphasize the history of the FTCA, because I think it's perfectly clear that Congress at every turn, at every relevant historical juncture, signaled its approval of the view that this time bar was jurisdictional and could not be told. Congress has made significant changes to the time bar four times, in 1946, 1949, 1966, and 1988. And at each of those times, Congress's words and actions were either inconsistent with or unnecessary in light of an equitable tolling doctrine. I could just tick through them. In 1946, Congress enacted the FTCA time bar and expressly declined to include a tolling provision, even though it had considered earlier bills that did include that kind of tolling provision, which, as this Court has said, it was a deliberate choice rather than an inadvertent omission. In 1949, Congress was aware that there had been individual cases of hardship and debated in one of the hearings whether to create a reasonable cause exception. Instead of doing so, Congress decided to extend the deadline from one year to two, which would have been unnecessary if equitable tolling could take care of the hardship. 1966 is particularly important because at that point, there were two decades of experience with the FTCA, and every lower court to consider the issue had held that it was jurisdictional and not subject to tolling. Congress was aware of those decisions because, repeatedly, litigants came to it during that time period and requested relief in the form of a private bill. And there, Justice Ginsburg, Congress did use that magic word, jurisdictional. Congress repeatedly granted relief through private laws that conferred jurisdiction on district courts, notwithstanding the time bar in Section 2401B. Finally, in the sentence that I just read, Justice Ginsburg, Justice Kagan, in 1969, I would argue, when Congress then, in 1966, reenacted the time bar without making any material change, Congress was aware that this is how courts were interpreting the time bar. And this Court itself had just recently announced in Soriano that the Tucker Act time bar in that language was jurisdictional, not subject to tolling, and Congress acted in reliance on those decisions when it reenacted the bar in 1966. Finally, in 1988, this was when Congress enacted the Westfall Act. At that point in time, there was a particular situation of hardship that had arisen when a claimant had sued a Federal employee and then the United States was substituted as a defendant after the time had run to present a claim to the administration. Ginsburg-Garza, I do think that the other side's account, Mr. Schnapper's account of the Westfall Act, the one that Congress was intending to benefit was not the plaintiff, not the injured plaintiff. It was the Federal employee, because until Westfall v. Urban, the Federal employee was off the hook. He wasn't so then when this Court said Federal employee, you're going to be stuck, then Congress passed a relief measure for the Federal employee, not the plaintiff. It's absolutely the case, Justice Ginsburg, that that was the overall purpose of the Westfall Act. The Congress included section 2679d5, which was the provision that gave a claimant extra time to present a claim, 60 extra days, if the claimant was out of luck because the time of the statute had run by the time the United States was substituted as a defendant. And that exception that Congress introduced in 1988 would have been entirely unnecessary if Congress thought that courts could take care of this on a case-by-case basis through equitable tolling. So I think that the historical story here is consistent and it's clear. At every turn you're equating reasonable cause or something comparable with equitable tolling. Equitable tolling, as Justice Ginsburg pointed out earlier, is much harder to get. That's absolutely true, Justice Sotomayor, that it might be hard to get it in an individual case. But I think that it's clear, and this again comes from the Tucker Act line of cases, that Congress did view this as a strict limit on the waiver of sovereign immunity and that Congress had a right to suggest that it didn't even want to extend that waiver one bit more. Sotomayor, you've both been arguing this as if your situations are identical. But do you disagree with the Respondent here, who says that, who characterizes the administrative claim process under the FTCA as claimant-friendly? Certainly that process is claimant-friendly, but when the Court has emphasized that concern in other cases, and I'm thinking here of Bowen and Henderson, the Court was looking specifically at the time bar and whether it was claimant-friendly. In Bowen, the time bar itself had a provision that allowed the Secretary to extend out the limit for appealing a Social Security benefits denial, and the Secretary had interpreted that to encompass principles of equity and fairness. In Henderson, when the Court emphasized the claimant-friendly nature of the procedural posture of that case, the Court emphasized that there was no time limit at all for a veteran to present his claim. So in those cases, it was the time bar that was claimant-friendly. And here, we don't have that at all. We have a strict, absolute limit that has no space within the text to permit any notions of claimant-friendliness. So I think that is a relevant distinction between those cases where it has made a difference and where it has not. Kagan Ms. Prelogar, I asked Mr. Martinez a question before, and I have to tell you, I just forgotten his answer to it, so I'm going to ask you. How about 2401a? The government's position is that 2401a is jurisdictional, but I want to say at the outset that each statute has to be interpreted on its own terms. Well, why is 2401a jurisdictional if every statute has to be? You know, Mr. Martinez said it's those exact 12 words, and 2401a doesn't have those exact 12 words. 2401a originated in the Tucker Act itself in 1887, and based on that Tucker Act historical pedigree, we think that the same interpretation of it that was longstanding would govern here in this context. So for that reason we think it's jurisdictional. Is there any statute of limitations that applies against the Federal Government that you don't think is jurisdictional? Other than the ones that this Court has already ruled upon, I can't think of any off the top of my head, but I have to confess that I haven't done an extensive statute-specific analysis with respect to all of them. Scalia. Have you stopped beating your husband? Breyer. If, in fact, you've heard this already, but I'd like your specific answer to it. In Irwin, Chief Justice Rehnquist says, we — a waiver of — they're holding a new rule. He says that. He says that we now — a waiver of sovereign immunity cannot be implied, but must be expressed. Once Congress has made such a waiver, we think that making the rule of equitable to private suits amounts to a little broadening, such a principle, da, da, da, and that's what we hold. Now, has not the Court, I'm not sure, applied Irwin to statutes that were enacted before Irwin? It has, Justice Breyer. Now, if, in fact, we were to hold with you in this, how would we justify that? I mean, this is a statute that, as much as any, is trying to equate waived sovereign immunity, trying to equate private suits against private people with suits against the government. So if sometimes Irwin applies to a pre-Irwin statute, when no one in Congress thought that they would be doing that, why isn't this case in that? I know you've given many, many answers, but the answers that I hear are all answers that Congress at the time probably thought that equitable tolling wouldn't apply. I agree. That is probably what they thought, if they thought about it. But the same is probably true of dozens of statutes that were passed pre-Irwin. So what's the distinction? Because Rehnquist says we now are laying down, we think this case affords us an opportunity to adopt a more general rule. He thinks he's applying a new rule, and that's applying to prior statutes. So why not this one, if it's any? Irwin adopted that rule because it judged it to be a realistic assessment of legislative intent, but Irwin made clear that it's a rebuttable presumption. As this Court said in John R. Sandin Grable, it's not conclusive and it can be over the top. Breyer. I agree with you that Irwin does say it is likely to be a realistic assessment of legislative intent. That is one reason given among others. If I don't agree with you that that was meant to be absolute rather than simply a factor in the mine run of cases, suppose I don't accept your argument there, then I would have to apply it to this statute, right? And we agree that the presumption applies at the outset, at the threshold that Government has the verdict. I know, and what you're saying is that there are certain things that rebut it. But all those things, it seems to me, come down to saying, as I just said, the Congress at the time thought there wouldn't be equitable tolling. And that's why I asked this question. That would seem to me to be true of many statutes, if not all of them, passed before Irwin, and yet we have applied Irwin backwards. It may well be, Justice Breyer, that it's easier for the Government to rebut the presumption with respect to pre-Irwin statutes, because, of course, under Irwin, this Court does have to consider what the prevailing and contemporary legal context was at the time the statute was enacted. Holland makes that clear, where it suggests that the presumption has greater force as applied to statutes enacted after Irwin. Ginsburg. But the statute that it applied to in Irwin was enacted how many years, 18 years before? In 1972. That's correct, Justice Ginsburg. Of course, there is a relevant change in the law that happened in that time period. In 1967, this is, of course, after the FTCA had been reenacted, this Court decided Honda v. Clark. That was the first decision holding that there could be equitable tolling in a suit against the Government. And so by the time Congress enacted Title VII in 1970 — in 1972, it was legislating against a backdrop where there wasn't a uniform line of precedence from this Court saying that every statute waiving sovereign immunity was necessarily subject to tolling. I think the important point here, and this comes from Honda v. Clark as well, is an observation about the mode of statutory interpretation that we're urging. In Honda v. Clark, the reason the Court reached that conclusion, that there could be equitable tolling notwithstanding the sovereign immunity considerations, is because the statute in that case, the Trading with the Enemy Act, had been expressly patterned after the Federal Bankruptcy Act. And this Court said that lower courts had interpreted the Bankruptcy Act to permit equitable tolling. And so the Court said that the Trading with the Enemy Act should be interpreted the same way. That's precisely the argument we're making here. It's an argument about how Congress would have understood these words when it took them directly from the Tucker Act context and imported them into the FTCA. I'd like to make a brief observation about Respondent's primary effort to distinguish the Tucker Act cases. And this is the distinction that Respondent draws between the court of claims and district courts. Respondent says that those tribunals exercise fundamentally different powers when it comes to equitable tolling. But that would radically alter how this Court has long understood the court of claims powers. As we explained in our reply brief, all of Respondent's cases deal with the issue of equitable remedies, whether the court of claims can issue an injunction. No, it can't. But that's also true of district courts applying FTCA claims. There, the district court is only considering a claim for money damages. And the important point is this Court has never distinguished between the powers of the court of claims and powers of district courts with respect to equitable doctrines, equitable recoupment, equitable reformation of a contract, the equitable doctrines of laches and estoppel. Down the line, the Court has indicated that the court of claims has those powers equally with district courts. So there's simply no tenable basis to say that that tribunal-focused analysis creates a difference between the presumptions that should apply with respect to equitable tolling. It also doesn't do anything to explain this Court's Tucker Act cases. If, in fact, Respondent were right and this was a function of the tribunal, then what this Court could have said in those cases is, here's a statute administered by the court of claims, thus there's no equitable tolling. But, of course, that's not what this Court did in Kendall, Finn, Soriano, John R. Sand and Gravel, the entire line of cases. Instead, those cases turned on the text of the time bar and the fact that this was a waiver of sovereign immunity and that Congress intended that waiver to be interpreted narrowly. And, Justice Breyer, to your point about how equitable tolling rarely applies, Justice Ginsburg, I think you mentioned this as well, I do think it's important to look at this historical context and what this meant for Congress in 1946. By today's light, it's not a particularly big deal to sue the United States in its own name for money damages. But when Congress enacted a statute in 1946, it was an incredibly big deal. And, in fact, it took Congress two decades of debating this bill to even grow comfortable with the idea and to get everyone on board with waiving the sovereign immunity of the United States for tort actions. The Federal Government was out ahead of the States in this. The House report that accompanies the 1946 legislation notes only four States that had waived their sovereign immunity for tort claims. By 1969, it was only 17 States that had fully waived their sovereign immunity, only four of which, by the way, permitted any form of tolling. So I think it's pretty clear that when you look at the statute and you look at what Congress intended in 1946, those were the factors that motivated it. This was a strict condition on the waiver of sovereign immunity, and Congress intended it to be interpreted narrowly. If there are no further questions, I'd like to reserve the remainder of my time. Roberts. Thank you, counsel. Mr. Rosenkranz. Mr. Chief Justice, and may it please the Court. All of the arguments that you heard in Wong apply with equal force to our case, that is, Mr. Schnapper's arguments. But they apply with extra force with respect to the administrative presentment requirement. And the inclusion now of an administrative presentment requirement actually sheds some light on what Congress must have meant with respect to the filing provisions So there are additional reasons with respect to administrative presentment. And a lot of the arguments that the government has been making, particularly in the first argument in Wong, simply don't apply to 1966 or to administrative presentment. So Ms. Perlegar says 1966 was important. It was important. As of 1966, this scheme looked like a completely different scheme from the scheme that Congress passed in 1946. The Tucker Act, the suit filing deadline runs from accrual. There's no presentment requirement. The statute of limitations for filing a lawsuit is 6 years from accrual. There are statutory disability provisions. FTCA, the suit filing deadline now runs from an agency action, from the final determination. Presentment is required. The statute of limitations for filing the lawsuit is now 6 months from the agency action, and there are no listed exceptions. Now, the context is fundamentally different than for the presentment provision and now for the entire FTCA statute of limitations. But let me just talk first about presentment. So the central, first of all, the central focus of presentment is informality, is flexibility. You fill out a one-and-a-half-page form. You literally handwrite into little boxes. It takes 30 minutes to fill out. If you send it to the wrong agency, no big deal. The Department of Justice sends it on to the right agency. And the administrative process that is triggered by that filing is not what anyone would view as an adjudication. The statute says it's about settlement, it's about negotiations. To Justice Breyer's point, you're usually unrepresented by counsel. And the notion and DOJ says specifically in its regulations that what's supposed to happen are, quote, "...informal discussions, negotiations, and settlement rather than any formal or structured process." The notion of applying a rigid, indeed jurisdictional, rule to that very informal process flies in the face of the whole informality that Congress set up for the suit initiating process. Secondly --" Sotomayor, and without need to say, there were no prior cases talking about whether this was equitable tolling under the Tucker Act, because there was no such thing. That is exactly right. The presentment requirements all came into play in the 60s. They were never applied to the Tucker Act. This was part of a spate of new law. So the backdrop law against which this is being interpreted, all we have now, not when Congress passed it, but all we have now is Zipes. Now, all of the criteria that I was taking off as to what the statute of limitations looked like, it looks like Title VII. In Zipes, this Court tells us, that is, the statute of limitations in Title VII. In Zipes, this Court tells us that the presentment requirement is not subject to equitable tolling. So that's the second point. Scalia, so I understand you, are you arguing that tolling applies to the presentment provision even though it doesn't apply to other provisions? No, Your Honor. Is it possible for us to hold that? That is not what I'm arguing, Your Honor. What I'm arguing is tolling has always applied, certainly, to this statute, certainly under Irwin, for reasons that I will explain in a little bit. But when Congress reenacts this in 1966, it makes abundantly clear that that conclusion is correct, because now we've got this presentment requirement, which I think refreshes congressional intent with respect to what it was thinking on jurisdiction. But I will circle back to this in a moment, as I said, but I agree with everything Mr. Schnapper said. In 1946, it was also not jurisdictional for the --- I don't know what you mean by refreshes congressional intent. We have a fairly rigid doctrine that repeals by implication are not favored. And are you saying that the intent was refreshed so that even if Congress originally thought this was jurisdictional in the narrow sense, it now no longer is because of the adoption of the presentment provision? I am not, Justice Scalia. Let me just be clear. Our position is from 1946 on, it has always been subject to equitable tolling. It has never been jurisdictional. But to the extent that anyone doubts that, because as Justice Alito points out, Congress wasn't thinking about any of this. So all we are talking about is a battle of presumptions. We have two clear statement rules, and I grant you, Justice Scalia, that there's also another clear statement rule with response or another presumption, that is, with respect to choosing language from another source, which I will also get to in a moment. But let me just, if I may, finish on presentment. The third point I was going to make is that as originally drafted, this presentment requirement was never a requirement. It was in the original FTCA. It was permissive. So with respect to repeals by implication, what happens next is Congress makes it a requirement, and the presumption then, or the government's position then, as I understand it, is when Congress turned it in, turned it from permissive to a requirement, Congress also made that requirement both jurisdictional and impervious to the age-old doctrine of equitable tolling. Next point, this Court has never, ever found that an administrative presentment provision is jurisdictional or overcomes the presumption in favor of equitable tolling. And that really is a version of the point that Justice Sotomayor was making. Fourth, it is at least relevant that the statute here runs from accrual and not from  And so I kept promising that I was going to go back to some hard and fast point, and the government is making this argument that our fraudulent concealment point is really an accrual point. Well, if it is, then that means that the same conversations one would have about fraudulent concealment one would have about accrual anyway. So I kept promising that I was going to go back to the baseline points. And the baseline point Ginsburg, in that regard, would you clarify what is the government's, what is your position in response to the government's rather strong answer to your suggestion that equity was foreign to the Claims Court? Well, yes, Your Honor. First, let me begin by saying that our basic position is that the presumption exists that Irwin was a sea change in the law, that Irwin changes things as to every other statute moving forward. But we've also ticked off a series of differences between the Federal Tort Claims Act and the Tucker Act. And this difference in forum was one of them. So from the start, and I mean 1863, the Claims Court was just a very different body from a district court. Congress viewed it really as an arm of Congress at first, and then it got adjudicatory powers. But it didn't have, in 1863 when Congress passed the statute, and in the 1870s, and in the 1880s, and into the early 20th century, when this Court was interpreting the statute, the Court of Claims just simply did not have equitable powers. This Court said it in Bowen, the Claims Court does not have the general equitable powers of a district court. Now, the government cites several cases. You contradict the government on that point. I'm sure the government said just the opposite. The government did say just the opposite, and the government cites several cases. Now, it is telling us that this Court did not have the authority to do that. Ginsburg It didn't say the opposite. It said the Claims Court didn't have the authority to give equitable remedies. It didn't have the authority to enjoin. But from the beginning, it had equitable doctrine as part of its law. I agree, Your Honor, the government has taken the opposite position from what I'm saying with respect to whether the Court of Claims, from the start, had broad equitable powers, putting aside injunctions. And my point is, the first case that the government cites is 50 years after the Court of Claims was created. By that point, the jurisdictional train had left the station. Kendall had been decided. Finn had been decided. It was already set in stone that this was a court whose — for whom the statute of limitations was jurisdictional. Now, the cases the government cites, its best case is Bull v. United States. That's already 1935. I mean, that's many, many years later. And not a single one of those cases, including Bull, ever creates a case-by-case equitable sort of claimant-by-claimant analysis of the sort that equitable tolling. Scalia, you say they are later cases, but they didn't say the law has changed from what it used to be, did they? Didn't they purport to say that the Court of Claims had always had that power? Well, they didn't purport to say it, but they did say that the Court of Claims currently has that power, and I grant you that I'm — that may sound like splitting hairs, but we're — we're trying to — we're trying to get behind what this Court was doing back in the 1870s and 1880s. And I'll just emphasize, several of the cases that the government cites are cases in which what the Court of Claims does looks like the result is equitable, but what this Court held was that equity had nothing to do with why this Court approved what the Court of Claims did, but rather this Court was saying the powers that the Court of Claims was exercising were actually in the statute. So Milliken is a particularly striking example. This Court said that the Court of Claims' action with which the government chalks up to equity actually, quote, "...seems to us to fall within these words," that is, the words of the Tucker Act, quote, "...in their obvious and literal sense." But I don't want to dwell too much on — on the difference between the forums, because — Roberts. Well, if I could just pause there, and obviously I'll go back and reread Bull. But in Bull, they said the money should be returned because it offended principles of natural justice and equity. Yes, Your Honor. That doesn't sound like something in the statute. Yes, Mr. Chief Justice. And what was going on in Bull was also not claimant by claimant decisions. It was sort of a broad class of claimants. And I agree with you. That is the one — that is the closest case to what the government's position is. But those other cases are, to the extent that the Court of Claims is exercising what looks like equity, it's always in favor of the government, which is consistent with the manner in which the Court of Claims was born. It was intended to be a parsimonious doler out of government funds. So I want to turn, though, for a moment to the proposition that this is just a wholesale withdrawal — excuse me, a wholesale adoption of the Federal Tort Claims Act, plunked into a — excuse me, a wholesale adoption of the Tucker Act, plunked into a new framework, a new statute. It is not, certainly not in 1966 for the reasons that I've described, but also not in 1946. First, I've already mentioned this forum distinction. Secondly, there are — there is a distinction, and Congress understood there to be a distinction between torts and contract claim — torts on the one hand, and contract or takings claims on the other hand. Contract claims and takings claims, even contracts, Federal contracts, are governed by Federal law. Torts, this — the Congress made the decision that tort claims are going to be governed by State law, and it adopted statutes of limitations that mimicked State law statutes of limitations. That one-year statute of limitations was an effort to try to mimic what States were doing. And it changed to two years, Congress said, because it wanted to mimic what States were doing a little bit later. And it's important to understand that the State tort laws were always subject to equitable tolling. The differences between a two-year statute of limitations and a six-year statute of limitations is — is very considerable, especially when one brings to mind the are often unrepresentative. Ginsburg. May I interrupt you, because I thought I heard Ms. Prelogar say that at the time that the FTCA was adopted, there were only four States that applied tolling. I don't — I don't believe that is true. Equitable tolling has been a rule that court — that courts have applied since the early 1800s to all manner of — of claims. Torts were no exception. And one of the reasons that States had such short statutes of limitations was precisely because equitable tolling provided, she believed. Sotomayor, I'm not talking about their equitable tolling in tort cases. She's saying in waivers of sovereign immunity, there were claims against States, which is slightly different. Oh, yes. Yes, yes. So — so let me just rephrase what I understand the government to be arguing. Those weren't equitable tolling provisions in statutes, as I understand the point the government is making. Those are exceptions to statutes of limitations. They're rigid. They look like the Tucker Act exceptions, but they're not case by case. They are — if you're overseas, as Mr. Schnapper said earlier, it actually doesn't matter whether you're monitoring the docket and you can fully preserve your — your claims. It's just sort of a flat-out bar, and those are the ones that — that I believe the government is speaking about. Those are statutory, and as Mr. Schnapper pointed out, statutory exclusions from the statutes of limitations have always coexisted with equitable exclusions. And I also think — Sotomayor, do you think, like Mr. Schnapper, that your way of looking at this would call into question McNeil v. U.S.? No, Your Honor. I don't think it calls into question McNeil v. U.S. at all. So — and there are two pieces to the answer. The first piece is let's assume that McNeil was a jurisdictional ruling, which means that in order to present your — in order to file your lawsuit, you have to present your claim first to the agency. Well, in order to file a lawsuit in — outside of this context, you also have to file a complaint. The filing of a complaint is jurisdictional, but that doesn't mean that the time limit for filing it is jurisdictional. So to here, if, indeed, the filing of an administrative form, you know, this administrative presentment, is jurisdictional, that doesn't mean that the time limit for filing it is also jurisdictional. But I said there were two halves. The second half is I agree with Mr. Schnapper. This Court came to a conclusion in McNeil. The conclusion is you can't have your lawsuit without exhausting administrative remedies. That was not stated as a jurisdictional ruling. It was — it is analyzed much more like an exhaustion ruling to my mind, which doesn't necessarily mean jurisdictional. So I was beginning to tick off some of the differences between the Federal Tort Claims Act and the Tucker Act, and I was talking about the differences in statutes of limitations, the differences in the nature of the forums, the differences in the nature of the law. And I want to come back to that last one. The FTCA treats the government like a private individual. It says it three times in the statute. And it treats the government, to the Chief Justice's question, as a private individual with respect to liability. So it's not with respect to all procedures that might come up, but it says with respect to liability. Well, statutes of limitations dictate liability, and the procedures attached to the statutes — excuse me, the time limits attached to the statutes of limitations also affect liability. Sotomayor I have a question. Why is it important to tie this presumption of jurisdiction or not to the 1946 Act? I mean, why don't you just say that whatever presumptions existed of borrowing from the Tucker Act obviously changed in 1966? They changed the language, they changed the process. Do we need to go back? Why not just say whatever the presumptions were with respect to the jurisdictional nature in the Tucker Act in 1946, or even thereafter, got completely thrown out the window in 1966? That was indeed, Justice Sotomayor, my opening point, and I've been making this argument. And you said, I agree with Mr. Schnapper that since 1946, I mean, it's the same. So I was making the argument to those like Justice Scalia who reject our refreshment theory and say, well, what about 1946? And even in 1946, that if you apply the Irwin presumption, which this Court said in Irwin it would, you get the same result. And that's the fundamental point on the precedents that I want to make sure to emphasize. Our argument is not that this is a living statute that blows in the wind with congressional intent. Our argument is that Irwin made it clear that there is a sea change, that Soriano and all the cases dating back on the Tucker Act adopted a vision of what Congress must have intended, that Irwin says is wrong. That is not what Congress intends just because it waives sovereign immunity. And so the way that we're going to go about this is to say, well, I don't think it can be regarded as such a sea change because the basic principle is you're looking to legislative intent. And he said, the late Chief, that the realistic assessment of legislative intent is likely to be found based on the presumption, of course, you know, subject to rebuttal. So that doesn't seem to me to be the whole point is we think this is how best to find legislative intent. And that, I thought, has always been the rule. Well, that's always been the rule, Your Honor, in the private context, and the government is now being put in the private context, but that was not always the rule with respect to the government and certainly not consistently because we have Soriano. I mean, that was not a legislative intent. The view was not that we think the presumption of legislative intent is no equitable tolling. Oh, well, Your Honor, I beg to differ. As I read Kendall and Finn, they didn't – this Court did not use phrases like presumption. But what this Court did was to say Congress didn't say anything about this, but it was legislating against a backdrop of waiving sovereign immunity. And when Congress waives sovereign immunity, we have to read statutes in a particular way. We're going to read them very strictly. Irwin says, no, that's not how we're going to read statutes, that the better way to read statutes is to assume the opposite, that Congress did not intend statutes of limitations to be jurisdictional. And sure – and by the way, John R. Sand says, and I quote, it was, and I quote, a turn in the course of the law, which now, quote, places great weight upon the equitable importance of treating the government like other litigants and less weight on the special governmental interest in protecting public funds, words that this Court perhaps by accident, but almost took directly out of the Federal Tort Claims Act, treating the government like it treats other parties. So Justice Scalia makes a powerful, powerful point about a countervailing presumption, but it's not, by which I mean it is another presumption, but it's a – it is an argument that doesn't play out plainly in this context. And the reason is, as was covered in quite a bit of detail earlier this morning, the notion of fixating on the words forever barred, or the 8 or 12 words around it, to the exclusion of the rest of the statute, is just wrong. There was no magic to the words forever barred, not in 1863, not in 1946. If you do a Westlaw search of forever barred, you will find scores of garden-variety statutes of limitations that are structured exactly this way and that use the exact same words, and that's the point Justice Kagan was pointing out. Professor Sisk's brief at page 20 gives all sorts of examples. Mr. Schnapper gave others. The Fair Labor Standards Act is one. The statutes or statute that this Court was interpreting in both Clare and Rotella is another, and then layer on top of that the fact that the Federal – that the Tucker Act no longer even has forever barred in the language, and still this Court says it bears the same meaning, and it points out in – in John R. Sands that the change in language did not make a fundamental difference. And as I was saying – oh, let me just make one more point on this. In 1877, this Court in a case called Sanger, which is also cited in Professor Sisk's brief, says that that very language, forever barred, is, quote, an ordinary statute of limitations. So let me just pause and see if the Court has other questions that it wants to draw me to. So if there are no further questions, we respectfully request that the Court affirm the court of appeals. Thank you, Your Honors. Roberts. Thank you, counsel. Ms. Prelogar, you have 8 minutes remaining. If I could just make three points. First, with respect to the administrative presentment requirement in particular, I want to be very clear on this. From the beginning, from 1946 forward, there was an optional administrative presentment procedure, and this appears in our brief at page 9A. This is the original text of the FTCA time bar, and it uses the very same operative language with respect to that administrative presentment option. Every claim against the United States cognizable shall be forever barred unless. So this is a procedure that has been in the FTCA from the very beginning. In 1966, what Congress did is make that administrative presentment requirement mandatory. But when it did so, it did so against the backdrop of every lower court to consider the issue holding that this language was jurisdictional, not subject to tolling. It did so against the backdrop of Congress repeatedly in the private bills making clear that this was jurisdictional language and that it had to confer jurisdiction on district courts when plaintiffs were trying to proceed outside the time limits. Sotomayor, are you saying that the administrative process was jurisdictional? I mean the administrative presentment requirement itself, of course, this Court had held, has held, was jurisdictional in the McNeil case. I'm not aware of lower courts in that context. Sotomayor, did we use the language jurisdictional? You affirmed for lack of jurisdiction, and I think that McNeil language does show that it's an absolute or strict deadline. There's no room for any exception to it. Every lower court has understood McNeil to be jurisdictional. And Congress in 1988, when it enacted the Westfall Act, specifically said in the House report there that the administrative exhaustion requirement was jurisdictional, which is why it created that narrow exception to permit an extra 60 days. So I think it is clearly settled that the exhaustion requirement at this point is jurisdictional. But the point I was trying to make about the 1966 reenactment is there against that consistent backdrop about what this language means, the language that Congress had used. Congress, to set forth the presentment requirement, used the same language once again and therefore intended it to have the same meaning. Well, Mr. Rosenkranz tells us that that language is pretty typical for your ordinary run-of-the-mill statute of limitations. It sounds pretty daunting, you know, forever barred, but apparently that's the normal language that's used. And it's absolutely the case, Mr. Chief Justice, that it's not forever barred itself that necessarily has magic import here. It's the Tucker Act analogy, the fact that Congress got this language from the Tucker Act and that in that context, which was a parallel context, it had been interpreted to be jurisdictional, which makes the difference here. Every statute will have to be evaluated in light of not just the text, but its context and history. Breyer. Exactly the problem, because really the better language in Irwin is, again, the Chief Justice, a continuing effort on our part to decide each case on an ad hoc basis, as we appear to have done in the past, would have the disadvantage of continued unpredictability without the corresponding advantage of greater fidelity to the intent of Congress. We think this rule affords us an op – this case affords us an opportunity to adopt a more general rule to govern the applicability of equitable tolling in suits against the government. Yet everything I've heard, not everything, but many of the things I've heard, say that this statute is special because if we go into the history of it, if we decide what the various other rules are that might infer intents where they say nothing, if we look over to the text, if we do this, if we do that, we will discover that here, unlike many other statutes that use the words forever barred, here Congress really intended it. Now, how do we reconcile that view with the two sentences I just read? Well, Justice Breyer, I think that it would be very easy if the Irwin presumption were just conclusive, but it's not. The Court adopted that presumption as a way to implement congressional intent, and the Court made clear that it's rebuttable, which means that the government is, if the government can come forward with statute-specific evidence that it is rebutted, the Court needs to honor congressional intent in an individual case. So the Irwin presumption can't excuse the normal statutory interpretation process, looking at the text, context, and history. A brief point on the court of claims issue. If I understand Respondent, he would distinguish our cases by saying that they were all rendered after this Court's Tucker Act line of cases in 1906 and 1935. Notably, that's before Congress enacted the FTCA. And it shows that Congress, when it was enacting that language, had no reason to think that there was some tribunal-based difference between the court of claims and the district courts, such that the language would be interpreted in fundamentally different ways based only on the tribunal. A final point I'd like to make, drawing back, to just focus on what I understand to be the basic divide between the parties in this case. Respondents in both cases seek primarily to rely on a general presumption, the Irwin presumption, which wasn't announced with this particular statute in mind. The government has come forward with an overwhelming amount of statute-specific evidence related to the text, the context, the history of this statute, and that statute-specific evidence has to control. The Irwin presumption is rebutted. If there are no further questions, we respectfully ask that you reverse the decision of the Ninth Circuit. Thank you, counsel. The case is submitted.